IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT EARL CLAYBORNE, JR., | ) | 8:15CV198 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| TECUMSEH DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Robert E. Clayborne filed his Complaint (Filing No. 1) in this matter on May 28, 2015. This court has given Clayborne leave to proceed in forma pauperis. The court now conducts an initial review of Clayborne's claims to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) or 1915A.

## I. SUMMARY OF COMPLAINT

Clayborne's claims are based on incidents that occurred during an inmate-led prison riot on May 10, 2015, at the Tecumseh State Prison ("TSP") in Tecumseh, Nebraska. Liberally construed, he asserts Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983. He has sued Scott Frakes, Brian Gage, Keith Broadfoot, and other individuals he identified as Crop, Guthrie, Tompkins, and Sherman. (Filing No. 1 at CM/ECF p. 1.) Frakes is the director of the Nebraska Department of Correctional Services, of which the TSP is a part, and the other defendants are employed at the TSP. (Filing No. 1 at CM/ECF p. 1.)

At all relevant times, Clayborne resided in the protective-custody unit ("PCU") at the TSP. (Filing No. 1 at CM/ECF p. 4.) On May 10, 2015, Crop, Guthrie, and Tompkins were working within the PCU. (Filing No. 1 at CM/ECF p. 2.) Clayborne

alleged the fire alarms sounded at around 4:00 p.m. on this date, at which time he exited his cell. Clayborne looked for staff so they could advise him as to where to go, but none could be found. (Filing No. 1 at CM/ECF p. 4.)

Clayborne exited the unit through what he believed to be the fire exit, but quickly returned inside because there were general-population inmates in the area. Clayborne again looked for staff, this time to advise them that protective-custody inmates were "being mixed up" with general population inmates, but no staff could be found. (Filing No. 1 at CM/ECF p. 4.) Clayborne then used the inmate phone to attempt to notify the department of corrections that there were inmates trapped in their cells. In addition, he attempted to contact the prison's central control via an intercom to advise them to open the rest of the inmates' doors, but he received no response. (Filing No. 1 at CM/ECF p. 5.) At some point, he heard a voice over the intercom advising prisoners to go outside for safety. (Filing No. 1 at CM/ECF p. 6.)

Clayborne alleged that no prison official came to his aid or the aid of the other protective-custody inmates for six to seven hours. During this time, general-population inmates entered the PCU, started fires, and committed acts of violence. Clayborne alleged that "for 6 to 7 hours [he] lived with the fear of being caught up in the death by the hands of an angry mob or deadly fires would take [his] life." (Filing No. 1 at CM/ECF p. 6.) Clayborne believes prison staff "left [him] to die" within the PCU. (Filing No. 1 at CM/ECF p. 6.)

Clayborne alleged these incidents caused mental, emotional, and physical injuries and exacerbated his previously-diagnosed mental illnesses. (Filing No. 1 at CM/ECF pp. 6-7.) He seeks unspecified injunctive and declaratory relief, and also one million dollars in money damages from each of the named defendants. (Filing No. 1 at CM/ECF p. 9.)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under

color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

#### A. Sovereign Immunity

Clayborne sued seven State of Nebraska employees in their individual and official capacities. Thus, the first question the court must address is to what extent, if any, the Eleventh Amendment bars his claims.

The Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See* Hadley v. North Arkansas Cmty. Technical Coll., 76 F.3d 1437, 1438 (8th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997); Hans v. Louisiana, 134 U.S. 1, 15 (1890). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See*, *e.g.*, *id.*; Nevels v. Hanlon, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in Ex Parte Young, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief. Green v. Mansour, 474 U.S. 64 (1985).

In part, Clayborne seeks monetary relief from state official defendants for alleged *past* violations of federal law. There is nothing in the record to suggest the State of Nebraska waived, or that Congress overrode, sovereign immunity here. Thus, Clayborne's claims against the defendants in their official capacities are barred by the Eleventh Amendment. Because Clayborne's only discernible claims for relief

4

are monetary, this case may not proceed to service of process against the defendants in their official capacities.

**B.     Eighth Amendment**

The court must consider whether Clayborne has stated plausible claims for relief against the defendants in their individual capacities. Clayborne's constitutional claim is based on an alleged violation of his Eighth Amendment rights.

> The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." The Supreme Court counsels that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." That duty, among other things, requires those officials to take reasonable measures to "protect prisoners from violence at the hands of other prisoners." The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the penalty that criminal offenders pay for their offenses."
>
> In order to prevail on an Eighth Amendment failure-to-protect claim, [an inmate] must make two showings. First, [the inmate] must demonstrate that [he or she is] "incarcerated under conditions posing a substantial risk of serious harm." The second requirement concerns the state of mind of the prison official who is being sued. It mandates that the [inmate] show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."

*Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994) (other citations omitted).

After careful review of Clayborne's Complaint, the court finds Clayborne has stated plausible claims for relief against Defendants Scott Frakes, Brian Gage, and the individuals he identified as Crop, Guthrie, and Tompkins. Crop, Guthrie, and Tompkins were working within the PCU on the date of the riot, while Frakes and Gage, as prison director and warden, were responsible for the safety and security of the prison. While Clayborne did not specifically allege any personal involvement by these defendants, such is the nature of his allegations. That is, these defendants were responsible for Clayborne's safety and security on the date in question. His allegations that they waited six to seven hours to come to his assistance in the face of fires and rioting prisoners are sufficient to state plausible claims for relief at this juncture of the case.

Clayborne has not stated plausible claims for relief against Keith Broadfoot or the individual he identified as Sherman. Clayborne alleged Broadfoot is a unit manager and Sherman is a unit administrator at the TSP. He did not allege these individuals were working on the day of the riot or that they had any responsibility whatsoever for his safety and security on the day of the riot. Therefore, the court will dismiss Clayborne's claims against Broadfoot and Sherman.

IT IS THEREFORE ORDERED that:

1. Clayborne's claims against Keith Broadfoot and Sherman are dismissed in their entirety, and Clayborne's claims against Scott Frakes, Brian Gage, Crop, Guthrie, and Tompkins in their official capacities are dismissed.

2. This matter may proceed to service of process as to Clayborne's Eighth Amendment claims against Scott Frakes, Brian Gage, Crop, Guthrie, and Tompkins in their individual capacities.

3.    The clerk of the court is directed to send to Clayborne a copy of the Complaint, a copy of this Memorandum and Order, and five summons forms and five USM 285 Forms for service on Scott Frakes, Brian Gage, Crop, Guthrie, and Tompkins in their individual capacities. (See attached Notice Regarding Service.)

Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 120 days of filing the complaint. However, Clayborne is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

4.    If requested to do so in this matter, the United States Marshal will serve all process in this case without prepayment of fees from Clayborne. In making such a request, Clayborne must complete the USM 285 forms to be submitted to the clerk of the court with the completed summons forms. Without these documents, the United States Marshal will not serve process. Upon receipt of the completed forms, the clerk of the court will sign the summons forms and forward them to the United States Marshal for service on the defendants, together with a copy of the Complaint.

5.    The clerk of the court is directed to set the following pro se case management deadline: March 1, 2016: check for completion of service of process.

DATED this 30th day of October, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

7

**Notice Regarding Federal Rule of Civil Procedure 4**

Federal Rule of Civil Procedure 4 requires that a defendant be served with the complaint and a summons. This is to make sure that the party you are suing has notice of the lawsuit. Federal Rule of Civil Procedure 4(e) governs service of process on an individual (i.e., your individual capacity claims).

In this case, Rule 4(e) means copies of the summons and complaint must be served on the defendants individually.

You may ask the United States Marshal to serve process, as described in the court's order, because you are proceeding in forma pauperis.